UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JARED SCHNACKENBERG,

    Plaintiff,

vs.                                     Case No.  3:24-cv-324-MMH-PDB

TOLL BROTHERS MORTGAGE
COMPANY,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Defendant's Renewed Motion for Summary Judgment (Doc. 149; Motion), filed September 30, 2025. Plaintiff, Jared Schnackenberg, filed his Response to Defendant's Renewed Motion for Summary Judgment (Doc. 150; Response) on October 28, 2025. On the same day, Schnackenberg also filed his Notice of Filing Additional Evidence in Opposition to Defendant's Renewed Motion for Summary Judgment (Doc. 151), attaching several exhibits. On November 12, 2025, Defendant, Toll Brothers Mortgage Company, filed its Reply in Support of its Renewed Motion for Summary Judgment (Doc. 152). Accordingly, this matter is ripe for review.

I. **Background**[1]

On March 30, 2022, Plaintiff, Jared Schnackenberg, entered into a contract with Toll FL XIII Limited Partnership (the Seller) to purchase a new home in St. Johns, Florida (the Property). See Agreement of Sale (Doc. 46-2; Purchase Agreement), filed December 9, 2024. In connection with this purchase, on April 6, 2022, Plaintiff applied for a new home mortgage loan from Defendant, Toll Brothers Mortgage Company (TBMC), an affiliate of the Seller. See Affidavit of Jared Schnackenberg in Support of Plaintiff's Motion for Partial Summary Judgment on Liability (Doc. 49-1; Plaintiff's First Affidavit), filed December 9, 2024, ¶ 4; Uniform Residential Loan Application (Doc. 65-1; Loan Application), filed January 17, 2025. Both TBMC and the Seller are wholly owned subsidiaries of Toll Brothers Inc. Compare Amended Complaint and Jury Demand (Doc. 33; Amended Complaint), filed September 3, 2024,[2] ¶ 67, with Defendant's Answer and Affirmative Defenses (Doc. 36), filed September 19, 2024, ¶ 67.

On April 27, 2022, Schnackenberg and TBMC entered into the Mortgage Loan Commitment (Doc. 33-1; Loan Commitment). Under the terms of the Loan

---

[1] For the purpose of resolving the Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Plaintiff, Jared Schnackenberg. However, the Court notes that these facts may differ from those that can ultimately be proved at trial. See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

[2] Schnackenberg attaches many relevant documents to the Amended Complaint filed on September 3, 2024; the Court references these as exhibits to "Doc. 33" on the Court's docket.

Commitment, Schnackenberg's application for a loan of $647,200 was conditionally approved, but it remained subject to certain terms and conditions. See id. at 1. For example, upon TBMC's request, the Loan Commitment required Schnackenberg to provide specified documentation, including "copies of cancelled checks and the corresponding bank statement(s) to source" earnest money deposits paid to the Seller. See id. at 2. After entering into the Loan Commitment, Schnackenberg and TBMC worked to acquire the documentation necessary to obtain final approval. See Affidavit of Jared Schnackenberg in Opposition to Defendant's Renewed Motion for Summary Judgment (Doc. 151-3; Plaintiff's Second Affidavit), filed October 28, 2025, ¶ 5. Notably, during this time, Schnackenberg paid the Seller a total of $67,344 in pre-closing deposits (the Deposits).[3] See id. ¶ 4.

Before the scheduled closing of the Loan Commitment and the underlying property purchase, Schnackenberg and one of TBMC's loan officers discussed increasing the amount of Schnackenberg's loan. See id. ¶ 6. In April 2023,

---

[3] It appears that Schnackenberg attempts to manufacture a dispute of material fact by stating that he paid the Deposits to "TBMC and/or Seller." See, e.g., Response ¶¶ 12, 33; Plaintiff's Second Affidavit ¶¶ 4, 18. But the evidence shows that the Deposits were paid to the Seller. See, e.g., Loan Commitment at 2 (referencing "earnest money deposits paid to the builder"); Letter Dated August 24, 2023 (Doc. 33-4; Default Notice) (advising Schnackenberg that the Seller would retain his Deposits should he fail to close on the Property). And Schnackenberg's vague phrasing constitutes no more than a mere scintilla of evidence insufficient to create a genuine dispute of material fact. See Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) ("[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986))).

TBMC issued loan estimates reflecting increases of Schnackenberg's loan to $725,000 and $726,200. See Plaintiff's Second Affidavit ¶¶ 7–9; see also Plaintiff's Second Affidavit Exhs. A–C (Doc. 151 at 6–17; Increased Loan Estimates). And, on July 21, 2023, TBMC sent Schnackenberg a "Closing Disclosure" setting forth the final loan terms for a loan of $726,200. See Plaintiff's Second Affidavit ¶ 10; Closing Disclosure (Doc. 33-2).

On July 25, 2024, Schnackenberg and his family traveled from Colorado to Jacksonville, Florida, expecting to move into their new home. See Plaintiff's First Affidavit ¶ 17. However, before they arrived, TBMC informed Schnackenberg that it could not offer the increased loan amount reflected in the Increased Loan Estimates and Closing Disclosure. See id. ¶ 18. TBMC remained willing to offer a loan under the terms the parties agreed to in the Loan Commitment. See Exhibit 3 (67-2; Comment Log), filed January 22, 2025, at 3. But Schnackenberg declined to move forward with the Loan Commitment under these terms. See id. at 2–3.

Unable to move into their intended home upon arrival in Florida, Schnackenberg and his family checked into a hotel and their belongings remained packed away in rental trucks. See Plaintiff's First Affidavit ¶ 18. In the meantime, TBMC attempted to set Schnackenberg up with a lender that appeared willing to offer a loan on his desired terms. See Comment Log at 2–3; Exhibit 8 (Doc. 67-7; Email Exchanges), filed January 22, 2025, at 10–11. But

Schnackenberg refused to submit an application with this alternate lender, believing that the process would be lengthy, expensive, and futile. See Email Exchanges at 13; Email from Jared Schnackenberg dated August 9, 2023 (Doc. 33-3; Email Proposal) at 2. Ultimately, Schnackenberg failed to close on the underlying property purchase, and the Seller retained the Deposits in accordance with the terms of the Purchase Agreement. See Email Proposal at 3; Letter Dated August 24, 2023 (Doc. 33-4; Default Notice). Schnackenberg asked TBMC and the Seller to return the Deposits. See Email Proposal at 3. But neither TBMC nor the Seller responded to this request. See Plaintiff's Second Affidavit ¶ 17. As such, Schnackenberg initiated this action in state court on February 15, 2024. See Complaint and Jury Demand (Doc. 8), filed April 1, 2024, at 1.

On March 29, 2024, TBMC removed this action to this Court. See generally Defendant's Notice of Removal (Doc. 1). In the Amended Complaint, Schnackenberg asserts several claims under federal and state law. See generally Amended Complaint. On December 9, 2024, both parties filed motions for summary judgment. See Toll Brothers Mortgage Company's Motion for Summary Judgment and Memorandum in Support (Doc. 44); Plaintiff's Motion for Partial Summary Judgment on Liability as to Counts I & II of Amended Complaint (Doc. 47). After hearing oral argument on the motions, the Honorable William G. Young, sitting by designation, entered summary

judgment in favor of TBMC on all but one of Schnackenberg's claims. See Minute Entry (Doc. 118), entered April 15, 2025; see also Order (Doc. 140; Clarification Order), entered July 23, 2025, at 2–3. As a result, Schnackenberg's only remaining claim, and the only claim presently before the Court, is his claim arising under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

On August 12, 2025, the Court held a status conference to discuss pending pre-trial motions. See Clerk's Minutes (Doc. 146). In Defendant's Omnibus Motion in Limine (Doc. 100; Motion in Limine), filed March 31, 2025, TBMC sought to exclude all evidence of Schnackenberg's damages, arguing that the alleged damages are not recoverable under FDUTPA and are therefore irrelevant. See Motion in Limine at 10–22. At the status conference, TBMC furthered this argument, seeking to dismiss Schnackenberg's FDUTPA claim via a motion in limine.[4] See Transcript of Status Conference (Doc. 148; Transcript), filed September 8, 2025, at 4. To provide Schnackenberg with notice and an opportunity to be heard on this potentially dispositive issue, to

---

[4] "A motion in limine seeks to exclude anticipated prejudicial evidence before it is actually offered, not to determine the sufficiency of the evidence or merits of an issue." See Jean-Louis v. Clear Springs Farming, LLC, No. 8:13-CV-3084-T-30AEP, 2016 WL 6838497, at *3 (M.D. Fla. Nov. 21, 2016) (internal citation omitted). As such, "the typical in limine practice of federal courts does not include the dismissal of claims." See Gold Cross Ems, Inc. v. Children's Hosp. of Alabama, 309 F.R.D. 699, 700 (S.D. Ga. 2015) (noting that at least two circuit courts of appeal have held the dismissal of claims on a motion in limine to be improper).

The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

prevent a waste of the parties' and judicial resources, and with the agreement of the parties, the Court directed TBMC to file a renewed motion for summary judgment addressing only the issue of whether Schnackenberg's alleged damages are recoverable under FDUTPA. See id. at 14–15, 21.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[5] An issue is genuine when the evidence is such that

---

[5] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 Advisory Committee's Note 2010 Amends.
> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent, but that they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

a reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Est. of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). For the moving party to meet its initial burden, it may "'point out to the district court … that there is an absence of evidence to support the nonmoving party's case.'" Gonzalez v. Lee Cnty. Housing Auth., 161 F.3d 1290, 1294 (11th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) (alteration omitted). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. "If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' then the court must enter summary judgment for the moving party." Gonzalez, 161 F.3d at 1294 (quoting Celotex, 477 U.S. at 323). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Discussion

The only issue before the Court is whether Schnackenberg's damages are "actual damages" within the meaning of the FDUTPA. TBMC contends that Schnackenberg's alleged damages, specifically the Deposits retained by the Seller and Schnackenberg's substitute housing and storage costs, are consequential damages not recoverable under FDUTPA.[6] See Motion at 6–11. In response, Schnackenberg asserts that the Deposits are actual damages as they constitute the "amount he paid for a 'valueless good or service,' in this case

---

[6] At the August 12, 2025 Status Conference, Schnackenberg stated that he believes the only damages that remain viable under FDUTPA are the Deposits and his housing and storage costs. See Transcript at 18.

- 9 -

a valueless mortgage loan commitment."[7] See Response at 11–12. Upon review, the Court finds Schnackenberg's alleged damages are not "actual damages" as measured under FDUTPA. As such, Schnackenberg's claim fails as a matter of law.

To state a claim under FDUTPA, a plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." See Marrache v. Bacardi U.S.A., Inc., 17 F.4th 1084, 1097 (11th Cir. 2021) (emphasis added) (quoting Carriuolo v. Gen. Motors Co., 823 F.3d 977, 985–86 (11th Cir. 2016)). As such, "actual damages are a required element of a FDUTPA claim." HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc., 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016), aff'd, 703 F. App'x 814 (11th Cir. 2017); see also Macias v. HBC of Fla., Inc., 694 So. 2d 88, 90 (Fla. 3d DCA 1997) (affirming the dismissal of a FDUTPA claim because the plaintiff suffered no actual damages). "To survive summary judgment, therefore, [Schnackenberg] must proffer some evidence of actual damages." See A&E Adventures LLC v. Intercard, Inc., 529 F. Supp. 3d 1333,

---

[7] While Schnackenberg requested to be heard as to his damages for substitute housing and storage expenses, see Transcript at 18–19, Schnackenberg does not address this category of damages in his Response. See generally Response. Accordingly, the Court considers this argument abandoned. See Case v. Eslinger, 555 F.3d 1317, 1329 (11th Cir. 2009) ("When a party moves for final, not partial, summary judgment, ... 'it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's] favor.'... Failure to do so may result in waiver or abandonment of the issue." (second, third and fourth alteration in original) (quoting Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1264 (11th Cir. 2001))); see also Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

1345 (S.D. Fla. 2021).

Under FDUTPA, the measure of actual damages is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Tri-Cnty. Plumbing Servs., Inc. v. Brown, 921 So. 2d 20, 22 (Fla. 3d DCA 2006) (quoting H & J Paving of Florida, Inc. v. Nextel, Inc., 849 So. 2d 1099, 1101 (Fla. 3d DCA 2003)). But, when the product or service "is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages." Id.; see also HRCC, Ltd., 302 F. Supp. 3d at 1323 ("[T]here are only two possible ways to measure actual damages in a FDUTPA claim: (1) the value between what was promised and what was delivered; or (2) the total price paid for the valueless good or service."). Notably, "FDUTPA 'does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.'" See Marrache, 17 F.4th at 1098 (quoting City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Likewise, special, incidental, and consequential damages are not available under FDUTPA. See Orkin Exterminating Co. v. Petsch, 872 So. 2d 259, 263 (Fla. 2d DCA 2004).

Here, Schnackenberg has alleged no actual damages as measured under FDUTPA. Indeed, it is undisputed that TBMC was ready and willing to provide Schnackenberg with a loan in accordance with the terms the parties agreed to

in the Loan Commitment.[8] See Comment Log at 3. As such, TBMC delivered exactly what "should have been delivered according to the contract of the parties." See Tri-Cnty. Plumbing Servs., 921 So. 2d at 22. As a result, Schnackenberg did not suffer actual damages as measured under FDUTPA.

Moreover, Schnackenberg's assertion that the Loan Commitment was "valueless" is unavailing. Indeed, aside from the fact that Schnackenberg never accepted financing from TBMC, it is unclear how the Loan Commitment was "valueless." Again, although Schnackenberg never received financing, TBMC was willing to provide a loan in accordance with the terms of the Loan Commitment. See Comment Log at 3. But Schnackenberg declined to accept the loan under these terms. See id. The Court is not convinced that Schnackenberg's refusal to accept a loan under the terms the parties contractually agreed to renders the Loan Commitment "valueless."

However, even if the Loan Commitment was a "valueless good or service," Schnackenberg's damages are still not recoverable under FDUTPA. Indeed, despite Schnackenberg's contention otherwise, the Deposits were not the "purchase price" of the Loan Commitment. While Schnackenberg was required to provide documentation showing that the Deposits were paid to the Seller

---

[8] The Honorable William G. Young, sitting by designation, previously held that the Increased Loan Estimates and Closing Disclosure did not modify or alter the terms of the Loan Commitment and were not enforceable contracts. See Clarification Order at 2–3.

before he could obtain final loan approval, see Loan Commitment at 2, this money was not paid to "purchase" the loan. Rather, this money was paid to the Seller and applied toward the costs associated with the underlying property purchase. See Default Notice (stating that the Seller would "retain all monies paid on account of the purchase price and convey the Property to others" (emphasis added)). Therefore, the Deposits were part of the purchase price of the Property, not the purchase price of the Loan Commitment.[9] In fact, it does not appear that Schnackenberg paid anything for the Loan Commitment. Indeed, he did not take out any financing and presents no evidence that he paid TBMC any interest or fees in relation to the Loan Commitment. As a result, it cannot be said that Schnackenberg "purchased" the Loan Commitment.

No matter which FDUTPA formula is used, Schnackenberg's lost Deposits are more appropriately categorized as consequential damages. Consequential damages are those that "do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the

---

[9] Schnackenberg asserts that Florida law allows for "the recovery of deposits under FDUTPA." See Response at 11–12. In support, Schnackenberg primarily relies on Tri-County Plumbing Services, Inc. v. Brown, 921 So. 2d 20 (Fla. 3d DCA 2006). But this case is inapposite. Indeed, in Tri-County Plumbing Services, the plaintiff's deposits were paid to the defendant and went toward the underlying service that the plaintiff contracted for. See, e.g., Tri-Cnty. Plumbing Servs., 921 So. 2d at 21–22 (affirming the award of damages equal to the amount plaintiff deposited with the defendant where plaintiff paid defendant to repair her plumbing and defendant refused to complete the job). Here, Schnackenberg's Deposits were paid to a third-party, not TBMC. Moreover, the Deposits were to be applied toward the underlying property purchase, not the cost of the Loan Commitment. As a result, while lost deposits may be actual damages under FDUTPA in some cases, they are not here.

non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting." Keystone Airpark Auth. v. Pipeline Contractors, Inc., 266 So. 3d 1219, 1222–23 (Fla. 1st DCA 2019) (internal quotation omitted) (emphasis omitted) (finding that the plaintiff's damages were consequential because they stemmed from loss incurred by plaintiff in its dealings with third parties and were not the direct or necessary consequence of the defendant's failure to perform under the parties' contract); see also Morgan v. Enter. Leasing Co. of Fla., LLC, No. 9:21-CV-80549, 2021 WL 4709787, at *5 (S.D. Fla. Oct. 8, 2021) (noting that "consequential damages are '[l]osses that do not flow directly and immediately from an injurious act'" (citing Black's Law Dictionary (11th ed. 2019))).

Here, Schnackenberg paid the Deposits to the Seller, a third party, and in relation to a separate agreement.[10] See Default Notice; Purchase Agreement.

---

[10] Schnackenberg does not attempt to pierce the corporate veil, but he suggests that the Court should overlook the fact that TBMC and the Seller are separate legal entities, arguing that "[t]here is no reasonable basis under the facts of this case to make a significant distinction between the building division and the mortgage division of Toll Brothers." See Response at 12. Schnackenberg further contends that "veil piercing is irrelevant" because he "alleges how TBMC directly participated in improper dealings that caused his damages." See id. at 15. In support, Schnackenberg cites several cases addressing whether an individual who effectuates a corporate entity's FDUTPA violations can be held personally liable for such violations. See, e.g., Anden v. Litinsky, 472 So. 2d 825, 826–27 (Fla. 4th DCA 1985) (holding that a corporate officer could be held liable under FDUTPA where he directly negotiated with plaintiff and effectuated the corporation's FDUTPA violations); KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008) (holding that a corporate officer could be held liable under FDUTPA where the officer directly participated in the corporation's FDUTPA violations). But these cases are inapplicable here. Schnackenberg does not allege that the

TBMC was not a party to this transaction. See Purchase Agreement. In fact, Schnackenberg entered into the Purchase Agreement before he applied for a loan from TBMC. Compare Purchase Agreement at 11, with Loan Application. In addition, the Seller's retention of the Deposits was not a necessary or direct consequence of TBMC's refusal to provide financing on Schnackenberg's desired terms. For example, if Schnackenberg had still closed on the Property, using his own funds or a loan from an alternate lender, Schnackenberg would not have lost the Deposits. Thus, the Deposits retained by the Seller are more appropriately categorized as consequential damages not recoverable under FDUTPA. See Orkin Exterminating Co., Inc. v. DelGuidice, 790 So. 2d 1158, 1162 (Fla. 5th DCA 2001) (noting that FDUTPA does not provide for the recovery of "actual consequential damages").

Overall, Schnackenberg fails to show that he suffered actual damages. Actual damages are a necessary element of a FDUTPA claim; therefore, the Motion is due to be granted. See A&E Adventures LLC, 529 F. Supp. 3d at 1345

---

Seller committed any FDUTPA violation, let alone that TBMC effectuated such a violation. And he "does not allege that Toll Brothers, Inc. used either [TBMC or the Seller] to perpetrate a wrong." See id. at 14. Moreover, TBMC's participation in the alleged improper dealings does not magically transform the nature of Schnackenberg's damages from consequential into actual. Accordingly, Schnackenberg's argument that veil piercing is "irrelevant" is unavailing. See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1120–21 (Fla. 1984) ("Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil." (citing Roberts' Fish Farm v. Spencer, 153 So. 2d 718, 721 (Fla. 1963)).

("To survive summary judgment . . . the plaintiff must proffer some evidence of actual damages.").

Accordingly, it is

**ORDERED:**

1. Defendant's Renewed Motion for Summary Judgment (Doc. 149) is **GRANTED**.

2. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant, Toll Brothers Mortgage Company, and against Plaintiff, Jared Schnackenberg.

3. The Clerk of the Court is further **directed** to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 26th day of January, 2026.

MARCIA MORALES HOWARD
United States District Judge

Lc35
Copies to:
Counsel of Record